IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN DOE, | ) | 8:18CV422 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| DOUG PETERSON, Attorney General of the State of Nebraska, in his official capacity, and JOHN A. BOLDUC, Superintendent of Law Enforcement and Public Safety for the Nebraska State Patrol, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

On October 15, 2018, a hearing was held on Plaintiff's request for a preliminary injunction (Filing 2). After carefully considering the evidence adduced and arguments presented at the hearing, as well as the parties' pre-hearing briefs, I have determined that a preliminary injunction will not issue, and that the temporary restraining order I entered on September 11, 2018 (Filing 9), must be lifted.[1]

*I. Background*

Plaintiff commenced this action on September 7, 2018, after receiving a letter from the Nebraska State Patrol advising that he was required to register as a sex offender under Nebraska law, as recently construed by the Nebraska Supreme Court in *State v. Clemens*, 915 N.W.2d 550 (Neb. 2018) (holding that Nebraska law requires sex offender registration based on a registration requirement from another state even

---

[1] The order temporarily restrained Defendants from enforcing Neb. Rev. Stat. § 29-4003(1)(a)(iv) & (b)(iii) and was to remain in effect until the issuance of a decision on Plaintiff's request for a preliminary injunction.

if the requirement in the other state is based on a juvenile adjudication). Plaintiff, who has resided in Omaha, Nebraska, since 2004, was adjudicated delinquent in juvenile court Iowa, in 1999, for violating section 709.3 if the Code of Iowa ("Sexual Abuse in the Second Degree") when he was 14 years old.

Plaintiff brings an as-applied challenge to the constitutionality of provisions of the Nebraska Sex Offender Registration Act ("SORA") that require any person who"[e]nters the state and is required to register as a sex offender under the laws of another village, town, city, state, territory, commonwealth, or other jurisdiction of the United States" to register in Nebraska. Neb. Rev. Stat. § 29-4003(1)(a)(iv) & (b)(iii).[2] Plaintiff contends these provisions deprive him of equal protection, and impede his constitutional right to travel, because persons who are adjudicated delinquent as juveniles in Nebraska are not required to register as sex offenders under SORA. *See* 272 Neb. Admin. Code ch. 19 § 003.05C ("The registration requirement does not apply to a person who: .... Is a juvenile adjudicated 'delinquent' or 'in need of special supervision' by the juvenile courts in the state of Nebraska[.]").

*II. Discussion*

Under the Eight Circuit's traditional *Dataphase* test,[3] "issuance of a preliminary injunction depends upon a 'flexible' consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *Planned Parenthood*

---

[2] The only difference between these two statutory provisions is that subdivision (1)(a)(iv) applies to anyone who has entered Nebraska since January 1, 1997, whereas subdivision (1)(b)(iii) applies to anyone who has entered Nebraska since January 1, 2010. The parties have stipulated that both provisions apply to Plaintiff. (Filing 31, p. 2, ¶¶ 9-10)

[3] *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981) (en banc).

*Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 729 n. 3 (8th Cir. 2008) (en banc). The third factor generally requires a showing that the moving party has a "fair chance of prevailing" on the merits, with a "fair chance" meaning something less than fifty percent. *Id.* at 730.

But where, as here, the moving party is seeking a preliminary injunction of the implementation of a validly enacted state statute, a more rigorous standard applies: It must be shown that the moving party "is likely to prevail on the merits." *Id.* at 731-32 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)). If the party with the burden of proof makes a threshold showing that it is likely to prevail on the merits, the district court should then proceed to weigh the other *Dataphase* factors. *Id.* at 732. "Put another way, 'without a likelihood of success, an injunction is not justified.'" *Comprehensive Health of Planned Parenthood Great Plains v. Hawley*, 903 F.3d 750, 754 (8th Cir. 2018) (quoting *Does v. Gillespie*, 867 F.3d 1034, 1046 (8th Cir. 2017)). Thus, if a district court determines that the moving party is not likely to prevail on the merits, that ends the analysis. *See Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) ("In such cases, it is only after finding a party is likely to prevail on the merits that a district court should weigh the other *Dataphase* factors."), *overruled on other grounds by Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012); *Waters v. Ricketts*, 159 F. Supp. 3d 992, 998 (D. Neb. 2016) (same).[4]

Looking first at Plaintiff's equal protection claim, I am not persuaded that he is likely to prevail on the merits. "The Equal Protection Clause of the Fourteenth Amendment ... is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff contends that, apart from the fact he was adjudicated delinquent by an Iowa

---

[4] "The elevated standard for enjoining enforcement of validly enacted statutes is designed 'to ensure that preliminary injunctions that thwart a state's presumptively reasonable democratic processes are pronounced only after an *appropriately deferential analysis*.'" *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1054 (8th Cir. 2014) (emphasis in original) (quoting *Rounds*, 530 F.3d at 733).

juvenile court applying Iowa law, he "is similarly situated ... to individuals with juvenile adjudications of SORA-related offenses from Nebraska courts" applying Nebraska law. (Filing 17, p. 7) While similarities undoubtedly exist, the distinction regarding the place of adjudication is not without a difference.

The Supreme Court recognizes an equal protection claim for discrimination against a "class of one"—meaning "the plaintiff did not allege membership in a class or group." *Barstad v. Murray Cty.*, 420 F.3d 880, 884 (8th Cir.2005) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff *in all material respects*." *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (emphasis supplied) (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir.2010)); *accord Bills v. Dahm*, 32 F.3d 333, 335 (8th Cir.1994) (explaining equal protection comparators must be similarly situated "in all relevant respects").

Although Plaintiff may deem it immaterial that he was adjudicated delinquent in Iowa rather than Nebraska, his need to register as a sex offender in Nebraska depends solely upon whether he "is required to register as a sex offender under [Iowa law]," Neb. Rev. Stat. § 29-4003(1)(a)(iv) & (b)(iii).[5] It is undisputed that Plaintiff is

---

[5] The Nebraska Supreme Court has held that "whether one is 'required to register as a sex offender' in another jurisdiction is determined under the laws of the other jurisdiction rather than under Nebraska law." *Clemens*, 915 N.W.2d at 557. SORA "adds no additional requirement that registration in the other jurisdiction must be based on a 'conviction' or an offense that would have required the person to register in Nebraska if the offense had been committed in Nebraska." *Id.* Two years earlier, I had predicted the Court would interpret the statute differently. *See A.W. v. Peterson*, No. 8:14CV256, 2016 WL 1092477 (D. Neb. Mar. 21, 2016), *aff'd sub nom. A.W. by & through Doe v. Nebraska*, 865 F.3d 1014 (8th Cir. 2017). In affirming my decision in *A.W.*, the Eighth Circuit noted that "the application of SORA and its public notification requirement to juveniles adjudicated delinquent in other jurisdictions but not in Nebraska [would] raise[ ] serious constitutional concerns under the rights to

now subject to a lifetime registration requirement under Iowa law as a result of his juvenile adjudication in that state. (Filing 31, p. 2, ¶ 10) It is also undisputed that if Plaintiff were currently residing in Iowa rather than Nebraska, his registration information would be published on the Iowa Sex Offender Registry website. (Filing 31, p. 2, ¶ 11; Filing 33, p. 10) While it is true, as Plaintiff argues, that he "would be treated differently today, had his juvenile adjudication occurred in Nebraska rather than Iowa" (Filing 17, p. 8), it is equally true that had Plaintiff been a Nebraska resident at the time of his Iowa juvenile adjudication, he would be treated no differently today.

In *Doe v. Jindal*, No. CV15-1283, 2015 WL 7300506 (E.D. La. Nov. 18, 2015), the plaintiff was convicted of a sex offense in Alabama and was required to register as a sex offender for life. The plaintiff then moved to Louisiana, where a conviction for a comparable offense would have resulted in a shorter registration requirement. However, under a provision of Louisiana's sex offender registry law, "if a person is convicted of a sex offense in a state other than Louisiana, and that state's period of registration for the offense is longer than the registration period that Louisiana law would require, Louisiana applies the registration period required by the offender's state of conviction." *Id.* at *3. The plaintiff's challenge to this provision on equal protection grounds was rejected by the district court in granting the defendants' Rule 12(b)(6) motion to dismiss, as the court stated:

> Here, Doe's allegations are flawed at their outset. In his complaint, Doe alleges that, as a person convicted of an Alabama sex offense and sentenced to a lifetime term of sex offender registration by an Alabama court, he is similarly situated to persons convicted of Louisiana sex offenses and sentenced to a term of registration by a Louisiana court. Doe is materially unlike, and therefore not similarly situated to, Louisiana offenders because he was convicted and sentenced of an

---

travel and to equal protection of the laws." 865 F.3d at 1020 n. 3. Unlike the minor in *A.W.*, however, Plaintiff does not appear to have been disadvantaged by entering Nebraska.

> Alabama offense, which carries penalties different from a Louisiana offense. *See Castaneira v. Potteiger*, No. 3:13cv3108, 2014 WL 4716621, at *6 (M.D. Pa. Sept. 22, 2014), *aff'd*, [621 Fed.Appx. 116], 2015 WL 4385694 (3d Cir. 2015) ("Plaintiff is not similarly situated to offenders convicted of similar crimes in Pennsylvania [because he] was arrested, charged and convicted in Georgia."); *Creekmore v. Attorney Gen. of Tex.*, 341 F. Supp. 2d 648, 663 (E.D. Tex. 2004) ("[Plaintiff] is not similarly situated to individuals convicted under the Texas Penal Code .... [Plaintiff] is similarly situated to individuals convicted of a sex offense in a jurisdiction other than Texas."); *Oulman v. Setter*, No. A13-2389, 2014 WL 3801870, at *3-4 (Minn. Ct. App. 2014) ("[I]ndividuals may be classified as dissimilarly situated based on location. ... [Plaintiff] belongs to that class of persons who commit crimes in violation of another state's laws, who are subject to registration requirements of that state, and who relocate to Minnesota."). Importantly, Doe admits that an Alabama state court initially imposed the lifetime registration requirement as part of his sentence. *See Castaneira v. Potteiger*, 2014 WL 4716621, at *6 ("[P]laintiff is not similarly situated to Pennsylvania offenders because Georgia, not Pennsylvania, imposed the special condition."). Because Alabama, and not Louisiana, has the specific, penological interest in imposing a lifetime registration requirement on Alabama offenders, such as Doe, Doe is different in fact from Louisiana offenders. Therefore, Louisiana need not treat Doe or other offenders with out-of-state convictions the same under the law. *See Plyler v. Doe*, 457 U.S. 202, 216 (1982). "Different treatment of [persons] who are not similarly situated does not offend equal protection." *Apache Bend Apartments, Ltd. v. United States ex rel. IRS*, 987 F.2d 1174, 1182 (5th Cir. 1993) (Goldberg, J., dissenting).

*Id.* at *8 (footnote omitted). I agree with this analysis, and conclude that Plaintiff is not likely to prevail on the merits of his equal protection claim because he is not similarly situated in all material respects to individuals whose adjudications were made by Nebraska juvenile courts applying Nebraska law.

Similarly, I conclude that Plaintiff is not likely to prevail on the merits of his right-to-travel claim. As articulated by the Supreme Court, the constitutional right to travel embraces at least three different components: "It protects the right of a citizen

of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). Plaintiff's claim involves the third component.

According to Plaintiff, "[i]t is the different treatment by the State of Nebraska of an individual adjudicated in Nebraska, versus an individual adjudicated in another state, that Plaintiff argues is a violation of his fundamental right to travel ...." (Filing 24, p. 4) This is essentially the same argument Plaintiff makes in support of his equal protection claim, and it fails for essentially the same reason. *See Zobel v. Williams*, 457 U.S. 55, 61 n. 6 (1982) ("In reality, right to travel analysis refers to little more than a particular application of equal protection analysis.").

The plaintiff in *Doe v. Jindal* also asserted a right-to-travel claim, which the district court dismissed as a matter of law, stating:

> Here, Doe contends that defendants have burdened the third component of the right to travel, *i.e.*, the right to be treated like other citizens of Louisiana. Doe argues that "[b]y treating individuals required to register on the state sex offender registry differently if they move to Louisiana after their conviction that they would be treated if they were living in Louisiana at the time of their conviction, the State of Louisiana denies those individuals ... the fundamental right to travel." Doe's argument rests on a fundamental misunderstanding of the applicable Louisiana law.
>
> Again, the relevant portions of Louisiana's sex offender registry laws are as follows. Louisiana Revised Statute § 15:542.1.3 explains that "[a]ny person who is convicted or adjudicated of an offense under the laws of another state, or military, territorial, foreign, tribal, or federal law [that] requires registration shall be subject to and shall comply with all of the registration requirements of this Chapter ...." *See* La. Rev. Stat. § 15:542.1.3(A). This provision does not limit its applicability to persons

born outside of Louisiana or to persons who lived in another state at the time of their conviction. *See Nolan v. State*, 148 So.3d 198, 203 (La. App. 1 Cir.), *cert. denied*, (La. 2014) ("The applicable Louisiana statute at issue, La. R.S. 15:542.1.3(A), specifically addresses procedures for the registration of sex offenders who have residences in Louisiana but who have been convicted under the laws of another state.") This is also clear because the law explicitly covers persons convicted of "military, territorial, foreign, tribal, or federal law" crimes. Louisiana's registry provisions plainly apply to "*any person* ... convicted or adjudicated of an offense under the laws of another state [or other sovereign]" without regard to the person's state of residency at the time of his conviction. *See* La. Rev. Stat. § 15:542.1.3(A) (emphasis added).

Louisiana Revised Statute § 15:544 is the general provision governing the duration of a sex offender's registration and notification period. Regarding those offenders who have been "convicted or adjudicated of an offense under the laws of another state, or military, territorial, foreign, tribal, or federal law," subsection 544(C) provides that a person who is required to register as a sex offender under the laws of another jurisdiction "shall register ... for the period of registration provided by the jurisdiction of conviction or for the period of registration provided by the provisions of [Louisiana's registry laws], whichever period is longer." La. Rev. Stat. § 15:544(C). Even though subsection 544(C) necessarily compels this result, subsection 542.1.3(B)(2)(C) explicitly provides that "if the period of registration required by the offender's jurisdiction of conviction is for the duration of the offender's lifetime ... [t]he duration of the registration for any such offender shall be for the duration of his lifetime ...." La. Rev. Stat. 542.1.3(B)(2)(C). This subsection also provides that "if the period of registration required by the offender's jurisdiction of conviction is for the duration of the offender's lifetime ... the frequency of in-person periodic renewals for the offender shall be every three months from the date of initial registration ...." La. Rev. Stat. 542.1.3(B)(2)(C).

Initially, the Court finds that these provisions do not facially restrict, in any way, a sex offender's movement into or out of the state of Louisiana. *See United States v. Byrd*, 419 Fed.Appx. 435, 492 (5th Cir. 2011) (rejecting plaintiff's right to travel challenge because "nothing in SORNA places any restriction on [defendant's] movement from state

to state"). The provisions merely require that if a person residing in Louisiana has at any time been ordered to register as a sex offender by a jurisdiction other than Louisiana, then that person must also register as a sex offender under Louisiana law. *See United States v. Shenandoah*, 595 F.3d 151, 162 (3d Cir. 2010) ("[Defendant] may travel interstate, but when he does, [he] must register in the new state, while a convicted sex offender who remains within a state need only remain properly registered therein.").

That Louisiana also requires the offender to register for whichever jurisdiction's applicable registration period is longer does not offend the right to travel. Doe interprets his fundamental right to travel as allowing a sex offender easily to escape the registration requirement imposed by his jurisdiction of conviction by moving to a state which would have imposed a more lenient registration condition if it had originally prosecuted the offender. The Constitution does not require this result. What the constitutional right to travel does require—"the right to be treated like other citizens of that State"—Louisiana's lifetime sex offender registry provisions already achieve. *See Saenz v. Roe*, 526 U.S. 489, 500 (1999). The challenged statutes treat an out-of-state resident with an out-of-state conviction and a lifelong Louisiana resident with an out-of-state conviction the same way. Accordingly, the Court concludes that Louisiana's lifetime registration provisions do not unreasonably burden the right to travel.

*Doe v. Jindal*, 2015 WL 7300506 at *8-9.

Another comparable case is *Doe v. Neer*, 649 F. Supp. 2d 952 (E.D. Mo. 2009), which involved a challenge to a provision of Missouri's Sex Offender Registration Act that required the registration of any Missouri resident who, since July 1, 1979, had been convicted in any other state of an offense which, if it had been committed in Missouri, would be a registrable offense. The plaintiff was required to register based on a 1981 sexual assault conviction in New Jersey, before his move to Missouri. The plaintiff contended the registration requirement violated his right to travel because Missouri citizens who were convicted of sex offenses in Missouri prior to January 1, 1995, the effective date of the Act, were not required to register. The district court

rejected this argument and granted the defendants' Rule 12(b)(6) motion to dismiss, stating:

> Mo. Rev. Stat. § 589.400.1(7) applies to several classes of individuals, among them, persons convicted of out-of-state crimes that, if committed in Missouri, would trigger Missouri's registration requirement. Doe falls into this category because if he had been convicted in Missouri, he would be required to register under SORA.
>
> Subsection (7) of Mo. Rev. Stat. § 589.400 requires all Missouri residents who were convicted of an offense in another state after July 1, 1979 to register under SORA if the same crime, if committed in Missouri, would require registration. This subsection applies regardless of the offender's residence at the time of the offense. For example, a Missouri resident who traveled to another state and was convicted of an offense that, if committed in Missouri, would require registration would be required to register under subsection (7). Similarly, a non-resident who was convicted of the same offense would be required to register upon moving to Missouri. Thus, it is the out-of-state conviction that triggers the registration requirement, not the residence of the person at the time of its commission.
>
> In this case, Doe was convicted of sexual assault in New Jersey under N.J. Rev. Stat. § 2C:14-2.b (1979). The same conduct would constitute the offense of child molestation under Mo.Rev.Stat. § 566.067.17 if committed in Missouri. Doe is therefore required to register under Mo. Rev. Stat. § 589.400(7) for conviction of a crime that, if committed in Missouri, would be a registerable offense. A lifelong Missouri resident who was convicted of sexual assault under N.J. Rev. Stat. § 2C:14-2.b would also be required to register under Mo. Rev. Stat. § 589.400(7). Doe has therefore failed to show that under the current version of the statute, Missouri has treated him, as a new arrival, differently than its treats its established residents. As a result, I will dismiss Doe's right to travel claim.

*Id.* at 956 (footnotes omitted).

Plaintiff's change of residency from Iowa to Nebraska has not been shown to have caused him any actual injury. Rather, the evidence shows Plaintiff is seeking to benefit from SORA's exemption from registration of juveniles who are adjudicated delinquent in this state. On the evidence presented, and for the reasons explained in the foregoing decisions, enforcement of Iowa's sex offender registration requirements against Plaintiff while in Nebraska will not impede his right to travel or deny him the equal protection of the laws. Therefore, a preliminary injunction will not issue.

### III. Conclusion

Plaintiff has failed to establish that he is likely to prevail on the merits of his claims that the registration requirements of Neb. Rev. Stat. § 29-4003(1)(a)(iv) & (b)(iii), as applied to him, are unconstitutional.

Accordingly,

IT IS ORDERED that:

1. Plaintiff's request for a preliminary injunction (Filing 2) is denied.

2. The temporary restraining order that was entered on September 11, 2018 (Filing 9), is hereby lifted and shall no longer be given effect.

October 22, 2018.                    BY THE COURT:

                                     s/ *Richard G. Kopf*
                                     United States District Judge